UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| REGINA C. HONEY, individually and as natural parent of ADDISON M. HONEY, a minor, and LUCAS R. HONEY, a minor; ADAM D. HONEY, individually and as natural parent of ADDISON M. HONEY, a minor, and LUCAS R. HONEY, a minor,<br><br>Plaintiffs,<br><br>v.<br><br>DIGNITY HEALTH, a California non-profit corporation, doing business as ST. ROSE DOMINICAN HOSPITAL-SIENNA CAMPUS; CONEXIS BENEFIT ADMINISTRATORS LP, a Texas limited partnership; CONEXIS LLC, a California limited liability partnership; PAYFLEX SYSTEMS, USA, INC., a Nebraska corporation; DOE Entities I-V; and ROE individuals VI-X,<br><br>Defendants. | Case No. 2:12-cv-00416-MMD-GWF<br><br>ORDER<br><br>(Def.'s Motion for Summary Judgment – dkt. no. 85; Plf.'s Motion for Summary Judgment – dkt. no. 87) |

I. **SUMMARY**

This dispute involves the notification provisions of the Consolidated Omnibus Budget Reconciliation Act ("COBRA"). Plaintiffs Regina C. Honey, Addison M. Honey, Lucas R. Honey, and Adam D. Honey (collectively, "Plaintiffs") allege that Defendant Dignity Health ("Dignity") failed to provide timely and adequate notice regarding Plaintiffs' right to continue participation in Dignity's group health plan following Dignity's termination of Regina's employment. Plaintiffs allege they suffered various harms due to the delayed notice, and request the maximum statutory damages detailed in section 502(c) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(c).

Before the Court are the parties' cross motions for summary judgment (dkt. nos. 85, 88), and Plaintiffs' Motion for Leave to File a Sur-Reply (dkt. no. 103). For the reasons discussed below, the Motion for Leave to File Sur-Reply is granted, and the parties' cross motions for summary judgment are granted in part and denied in part.

## II. BACKGROUND

The following facts are undisputed. Dignity provides health, vision, and dental insurance coverage to its employees through an "employee welfare benefit plan" (the "Plan"), as that term is used in 29 U.S.C. § 1002(1). (Dkt. no. 85-1, Ex. A.) Dignity is both the "sponsor" and the "administrator" of the Plan, as those terms are used in 29 U.S.C. § 1002(16). (Dkt. no. 85.) Until December 31, 2010, Dignity contracted with Defendant Conexis, LLC ("Conexis") to administer Dignity's compliance with COBRA's notification provisions for the Plan. (Dkt. no. 86, Ex. B.) After December 31, 2010, Dignity contracted with Defendant Payflex Systems, USA, Inc. ("Payflex") for the same services. (Dkt. no. 86, Ex. C.)

Dignity hired Regina on April 8, 2008, to work as a registered nurse. (Dkt. no. 88-1 ¶ 2.) Regina participated in Dignity's group health, vision, and dental plans with Addison as a covered beneficiary. (Id.) Adam was also a covered beneficiary for the dental portion of the Plan only. (Id.) Because Regina and Adam were not married until December 31, 2010, Adam was covered under the Plan as a Legal Domiciled Adult. (Id.)

### A. Regina's First Termination

In March, 2010, Regina began experiencing signs of pre-term labor and her doctor ordered bed rest. (Id. ¶ 4.) Regina requested leave between March 26 and April 12, 2010, to comply with the doctor's orders. (Id.) However, when Regina attempted to return to work after her symptoms had subsided, she was instructed not to come in, and, on April 22, 2010, Dignity informed Regina that her employment and benefits were terminated (the "First Termination"). (Id. ¶ 5.) Regina received a COBRA notification regarding her right to continue her health care benefits on May 19, 2010. (Id.)

///

### B. Regina's Second Termination

After filing a successful grievance against Dignity over the First Termination, Dignity reinstated Regina, and Regina returned to work on June 10, 2010. (*Id.* ¶ 6.) However, on June 14, 2010, Regina again experienced symptoms of pre-term labor and her doctor again ordered bed rest for the remainder of her pregnancy and for a six-week postpartum period. (*Id.* ¶¶ 7, 9.) Regina remained on bed rest until her son, Lucas, was born on July 27, 2010. (*Id.*)

At the end of her postpartum period, Regina informed her employer that she was medically cleared to begin working again on September 7, 2010, but she was never scheduled to return to work. (Dkt. no. 88-4.) In the following days, Regina attempted several times to reach a representative in Dignity's Human Resources ("HR") Department regarding her return to work, but she was unable to do so. (Dkt. no. 88-1 ¶¶ 11-14.) Regina also attempted to add Lucas to the Plan, but she could not access her self-service benefits account. (*Id.* ¶ 12; Dkt. no. 85-2, Ex. D, 45:1-47:21.) On September 22, 2010, Regina was finally able to speak to someone in HR, who informed her that Dignity had retroactively terminated both her employment and her benefits, with effective dates of June 22, 2010, and June 30, 2010, respectively. (Dkt. no. 88-1 ¶ 15.) On September 28, 2010, Regina received correspondence from Dignity dated September 15, 2010, formally notifying her of her termination. (*Id.* ¶ 16; Dkt. no. 88-6.)

### C. Regina's Attempts to Procure COBRA Notice

During her September 22, 2010, conversation with Dignity's HR representative, Regina stated that she had yet to receive a notification or information regarding her continued benefits under COBRA; she expressly requested the notification, conveying the urgency she felt as a result of medical bills related to her high-risk pregnancy. (Dkt. no. 88-1 ¶ 15.) The September 28, 2010, termination letter included an attachment explaining the availability of COBRA coverage. (Dkt. no. 85-2, Ex. E.) However, the letter did not provide a form for Plaintiffs to elect COBRA coverage. (*Id.*) Rather, the letter simply stated that enrollment information would be sent separately. (*Id.*) On September

30, 2010, Regina again called and left a message for Dignity's HR representative, informing her that no COBRA notification had arrived. (Dkt. no. 88-1 ¶ 17.) Regina received no response. (*Id.*)

On November 2, 2010, Regina and Adam attended a union meeting to discuss the issues surrounding her termination. (*Id.* ¶ 18.) At that meeting, Regina informed Dignity's representatives that she still had not received a COBRA notice. (*Id.* ¶ 19.) One of those representatives, Ms. Spencer, promised to look into the matter. (*Id.*) On November 8, 2010, Regina followed up with Ms. Spencer by email regarding her inquiry. (*Id.* at ¶ 21.) The following week, on November 15, 2010, Ms. Spencer wrote back and informed Regina that "[a]fter researching the COBRA issue, you were contacted based on the records. Unfortunately, there is really nothing else I can do." (Dkt. no. 88-8.) Regina made several more attempts to procure the COBRA notice. (Dkt. no. 88-1 ¶¶ 22-25.) On November 30, 2010, Regina received an email from Dignity's HR representative, which stated, "[w]e are contacting Conexis right now to have them issue the missed Cobra notification." (*Id.*; Dkt. no. 88-12.)

### D. The COBRA Notices

Conexis issued the required COBRA notification in connection with Regina's Second Termination in a correspondence dated December 7, 2010. (Dkt. no. 85-2, Ex. F.) Although the correspondence was addressed "[t]o Participant and/or any Covered Dependents," the correspondence listed only Regina and Addison as participants and/or beneficiaries. (*Id.*) Additionally, the coverage premiums were set out only for Regina and Addison. (*Id.*) The notice did make a request to "[p]lease verify our records are accurate and make changes as necessary;" however, the notice was silent about Adam and Lucas. (*Id.*)

On January 18, 2011, Regina contacted Conexis to elect benefits for herself and Addison. (Dkt. no. 88-1 ¶ 27.) However, Regina was informed that Conexis was no longer Dignity's co-administrator and that she needed to contact Payflex. (*Id.*) Regina did so, and was told that she was not in Payflex's system. (*Id.*) Payflex then issued a

separate COBRA notice on January 24, 2011. (*Id.* ¶ 28.) Like the Conexis notice, the Payflex notice only described coverage options for Regina and Addison. (*Id.*; dkt. no. 88-16.)

### E. Regina's Reinstatement

On May 1, 2011, Regina, her union, and Dignity entered into a settlement agreement, resolving Regina's grievance regarding her Second Termination. (Dkt. no. 85-2, Ex. H.) Under the Agreement, Dignity reinstated Regina's employment, paid Regina $600.00 to cover out-of-pocket medical expenses, and paid or wrote off all Plaintiffs' outstanding medical bills for the period between Regina's Second Termination and her reinstatement. (*Id.*; Dkt. no. 85-2 at 173.)

### F. This Lawsuit

Plaintiffs filed their First Amended Complaint (the "FAC") on March 22, 2013, claiming violations of COBRA's notice provisions and breach of fiduciary duties. (Dkt. no. 45.) The Court dismissed the breach of fiduciary duty claim pursuant to the parties' stipulation. (Dkt. no. 91.) The parties also stipulated to dismiss with prejudice Defendants Conexis and Payflex. (Dkt. nos. 102, 105.) Plaintiffs and Dignity now both move for summary judgment on the remaining claim for failure to provide the required COBRA notification. (Dkt. nos. 85, 88.) Plaintiffs have also filed a motion seeking the Court's permission to file a Sur-Reply to Dignity's Motion for Summary Judgment. (Dkt. no. 103.)

## III. MOTION FOR LEAVE TO FILE SUR-REPLY

Plaintiffs request permission to file a Sur-Reply in response to an alleged attack on Regina's credibility in Dignity's Reply to its Motion for Summary Judgment. The disagreement involves whether Regina elected COBRA coverage after she obtained adequate notice, or whether she allowed the coverage to lapse.

In its various filings, Dignity has consistently argued that Plaintiffs could not have suffered prejudice because, even after they received COBRA notice, they did not elect coverage. Dignity offers as support Regina's deposition testimony that she let the coverage lapse and began negotiating a reinstatement in February 2011. (Dkt. no. 85.)

In response, Plaintiffs offered Regina's affidavit, attesting to the fact that she had elected COBRA coverage on the last day before the deadline. (Dkt. no. 93-1.) Dignity then argued, in its Reply, that the affidavit was insufficient to create a question of material fact about Plaintiffs' election of coverage because the affidavit was self-serving and contradicted deposition testimony. (Dkt. no. 95); see Kennedy v. Allied Mut. Ins. Co., 952 F.2d 262, 266 (9th Cir. 1991). Plaintiffs' Sur-Reply confronts Dignity's claim that Regina's affidavit was inaccurate and includes an email chain between Dignity, Payflex, and the Plan's insurance provider confirming that Regina elected COBRA coverage on the last day of eligibility and discussing Regina's election in light of her reinstatement. (Dkt. no. 103, Ex. 1.)

Although a Sur-Reply should not have been necessary, the Court will allow its submission and consider the evidence attached. There is no doubt that the email chain could have been included with Plaintiffs' Opposition or Reply. Dignity had argued in its Motion for Summary Judgment and in its Opposition to Plaintiffs' Motion for Summary Judgment that Plaintiffs had not elected COBRA coverage. (Doc. nos. 85, 92.) Moreover, Regina's deposition testimony was available to Plaintiffs, and Plaintiffs should have been aware of the contradictory testimony. The email chain, however, cannot come as a surprise to Dignity because it involves Dignity's own agents and representatives discussing Regina's COBRA election. Indeed, Dignity itself produced the email chain in discovery. In short, Dignity argued that Plaintiffs never elected coverage while possessing contradictory information in which its own agents confirmed that Plaintiffs had elected coverage. Thus, the Court does not see how considering this evidence would prejudice Dignity. The Court will allow the Sur-Reply and consider Plaintiffs' proffered evidence.

IV.   **CROSS MOTIONS FOR SUMMARY JUDGMENT**

   A.   **Legal Standard**

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. Nw. Motorcycle Ass'n v. U.S. Dep't of Agric., 18

F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." See *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252. Although the parties may submit evidence in an inadmissible form, the Court may only consider evidence which might be admissible at trial in ruling on a motion for summary judgment. Fed. R. Civ. P. 56(c).

///

### B. Analysis

The sole claim remaining from Plaintiffs' FAC is for violations of COBRA's notice provisions. As the material facts are generally undisputed and the statutory penalty for any violation is left solely in the discretion of the district court, disposition of the case on summary judgment is appropriate. The two issues presented in the parties' competing motions for summary judgment are (1) whether Dignity's actions violated COBRA's provisions, and (2) if so, what statutory penalty, if any, should be levied.

Plaintiffs assert that summary judgment is warranted because Regina and Addison were not provided adequate COBRA notice until at least December 7, 2010, and Lucas and Adam were never provided with the required notice. Contrarily, Dignity argues that there was no statutory violation because the December 7, 2010, notice was legally sufficient for all members of the Honey household. Dignity also argues that summary judgment should be granted in its favor because its actions were not taken in bad faith and Plaintiffs suffered no prejudice. Because of the extent of Dignity's delay, the Court determines that Dignity did not comply with COBRA's notification requirements and is liable for statutory violations. However, the statute does not provide for all of the remedies Plaintiffs seek.

#### 1. Violation of COBRA's notice requirements

COBRA requires that employers give former employees the opportunity to elect the continuation of the employer's group health plan at the employee's own cost for a maximum of eighteen (18) months following the occurrence of "qualifying events." 29 U.S.C. §§ 1161, 1162(2)(A)(i); *see Gaskell v. Harvard Coop. Soc'y*, 3 F.3d 495, 498 (1st Cir. 1993). COBRA applies to employers employing more than 20 employees. 29 U.S.C. §1161(b). The parties do not dispute that Dignity is subject to COBRA's requirements.

COBRA additionally requires that employees and "qualified beneficiaries" receive notice of their right to continue their health coverage under an employer's plan both when coverage commences under the plan — not in dispute here — and after a

"qualifying event," such as termination of employment for a reason other than an employee's gross misconduct. 29 U.S.C. §§ 1163(2), 1166(a)(1), (a)(4). After a qualifying event, an employer has thirty (30) days to notify a plan administrator, who then has fourteen (14) days to notify a terminated employee and qualified beneficiaries of their right to continue coverage under the plan. Although the case law is divided regarding the deadlines applicable to employers who are also plan administrators, recent decisions have relied on a letter from the Department of Labor expressing its opinion that such employers should have forty-four (44) days to notify a terminated employee of his or her rights under COBRA. *See Roberts v. Nat'l Health Corp.*, 963 F. Supp. 512, 515 (D.S.C. 1997). The Department of Labor also recently proposed a rule establishing the 44-day deadline for employer-administrators. 29 C.F.R. § 2590.606-4(b)(2).

COBRA does not specify what constitutes adequate notice to plan participants, *see* 29 U.S.C. §§ 1162, 1165, and courts hold that "a good faith attempt to comply with a reasonable interpretation of the statute is sufficient." *Smith v. Rogers Galvanizing Co.*, 128 F.3d 1380, 1383 (10th Cir. 1997). Generally, a COBRA notice must provide sufficient information to "allow the qualified beneficiary to make an informed decision whether to elect coverage." *McDowell v. Krawchison*, 125 F.3d 954, 958 (6th Cir. 1997). Thus, courts have typically required the notice to contain information necessary to understand the substance of the benefits provided, the duration of benefits, and the applicable payment obligations. *See Rodriguez v. Int'l College of Bus. & Tech., Inc.*, 364 F. Supp. 2d 40, 47 (D.P.R. 2005).

The date of Regina's "qualifying event" was June 22, 2010 — the date her termination was made effective. Dignity was therefore compelled to provide the requisite COBRA notice by August 5, 2010.[1] Dignity does not assert that it provided notice by this

---

[1] The Court notes that this date most likely *precedes* the date when Dignity decided to terminate Regina's employment. Thus, even if Dignity provided the COBRA notice to Regina immediately after it decided to terminate her employment, the notice would still be delayed under the statutory deadline.

date, but simply argues that the December 7, 2010, notice was sufficient to comply with the statutory requirements. However, a 168-day delay cannot constitute a "good faith attempt to comply with a reasonable interpretation of the statute," especially when Regina repeatedly informed Dignity of its failure to provide the notice. *See Smith v. Rogers Galvanizing*, 128 F.3d at 1383. Consequently, Dignity's actions constitute a violation of COBRA's provisions.

Further, Dignity's argument that summary judgment should be granted in its favor based on the lack of bad faith and Plaintiffs' prejudice is misplaced. Nothing in the statute requires a showing of prejudice or bad faith to establish a violation of § 1132(c)(1). Rather, courts have examined bad faith and prejudice as mitigating factors in exercising their discretion to impose varying amounts of penalties. *See, e.g., Paris v. F. Korbel & Bros., Inc.*, 751 F. Supp. 834, 839-40 (N.D. Cal. 1990). Thus, the lack of bad faith and prejudice does not absolve a statutory violation. The Court, however, will consider these factors in determining what level of penalty to apply.

### 2. Statutory Penalties

Dignity's violation, however, does not entitle Plaintiffs to the full penalties they seek. The Court must address (1) whether Plaintiffs may claim penalties under § 1132(c)(1)(B); (2) whether plaintiffs other than Regina may assert independent claims; and (3) what penalties to assess with respect to each plaintiff who may assert independent claims.

#### a. Penalties under § 1132(c)(1)(B)

Plaintiffs claim entitlement to separate penalties under both 29 U.S.C. § 1132(c)(1)(A) and (B) for Regina, Addison, Lucas, and Adam, respectively. The statute providing remedies for a failed COBRA notice states:

> Any administrator (A) who fails to meet the requirements of paragraph (1) or (4) of section 1166 of this title . . . with respect to a participant or beneficiary, or (B) who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting

>participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100[2] a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper. For purposes of this paragraph, each violation described in subparagraph (A) with respect to any single participant, and each violation described in subparagraph (B) with respect to any single participant or beneficiary, shall be treated as a separate violation.

29 U.S.C. § 1132(c)(1).

Dignity argues that § 1132(c)(1)(B) only pertains to an administrator's failure, after written request, to provide a participant a copy of the summary plan description as mandated by 29 U.S.C. § 1024(b)(4). Dignity further argues that simultaneous claims under § 1132(c)(1)(A) and (B) are not permitted by the statute because § 1132(a)(1)(A) specifically covers a failed COBRA notice, so any additional claim under § 1132(a)(1)(B) would be redundant. Dignity's arguments are unsupported by any authority and directly contravene the plain language of the statute, which would permit recovery under both § 1132(c)(1)(A) and (B) for the acts alleged here.

Plaintiffs, however, did not properly request relief under § 1132(c)(1)(B) before their Motion for Summary Judgment, even though the allegations in Plaintiffs' FAC are broad enough to state a claim under § 1132(c)(1)(B). Indeed, both the FAC and Plaintiffs' computation of damages only reference $110 per day as the total penalty sought. The calculation for § 1132(c)(1)(B) damages — which entails an additional $110 per day and an entirely separate analysis for applicable dates and durations — first appears in Plaintiffs' Motion for Summary Judgment. The Court finds that as Plaintiffs failed to previously assert a claim to relief under § 1132(c)(1)(B), Plaintiffs have now waived this claim and may not supplement their FAC through a motion for summary judgment. *See Wasco Prod., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) ("[T]he necessary factual averments are required with respect to each material element of the underlying legal theory. . . . Simply put, summary judgment is not a

---

[2]This amount has been adjusted to $110. 29 C.F.R. § 2575.502c-3.

procedural second chance to flesh out inadequate pleadings." (*quoting Fleming v. Lind-Waldock & Co.*, 922 F.2d 20, 24 (1st Cir.1990))).

### b. Beneficiaries' Claims

The parties dispute whether COBRA provides a claim only for Regina as the employee and participant under the Plan, or whether beneficiaries may maintain actions as well. Dignity argues that § 1132(c)(1)(A) limits recovery to the plan participant. Dignity relies on *Wright v. Hanna Steel Corp.*, 270 F.3d 1336, 1343 (11th Cir. 2001), where the Eleventh Circuit determined that the phrase, "[f]or purposes of this paragraph, each violation described in subparagraph (A) with respect to any single participant . . ." in § 1132(c)(1) restricts the availability of a § 1132(c)(1)(A) claim to the plan participant. Several lower courts have adopted this interpretation. *See, e.g., Curbelo-Rosario v. Instituto de Banca y Comercio, Inc.*, 248 F. Supp. 2d 26, 31 (D.P.R. 2003); *Slipchenko v. Brunel Energy, Inc.*, No. H-11-1465, 2013 WL 4677918 at *12 n.11 (S.D. Tex. Aug. 30, 2013); *McConnell v. Costigan*, No. 00 Civ. 4598(SAS), 2002 WL 1968336 at *5 (S.D.N.Y. Aug. 23, 2003). However, other courts have awarded statutory penalties under § 1132(c)(1)(A) to individual beneficiaries. *See, e.g., McGoldrick v. TruePosition, Inc.*, 623 F. Supp. 2d 619, 634 (E.D. Penn. 2009); *Torres-Negron v. Ramallo*, 203 F. Supp. 2d 120, 122 (D.P.R. 2002). The Ninth Circuit has not directly addressed this issue.

Although the above-cited cases are not binding on this Court, the Court finds the latter approach — allowing claims from beneficiaries — to be more persuasive. The plain language of the statute's main clause states that "[a]ny Administrator . . . may . . . be personally liable to [a] participant or beneficiary." 29 U.S.C. § 1132(c)(1). Further, the secondary clause, on which the *Wright* court focused, simply prescribes the treatment of subsection (B) violations in relation to subsection (A), as the same action giving rise to a violation of subsection (B) (refusal to provide information after a request) could very well entail a violation of subsection (A) (failing to provide notice generally). In other words, failing to provide notice to participants or beneficiaries after a qualifying event — which only happens "with respect to any single participant" — is deemed a separate violation

than refusing to provide statutorily mandated information after a request, which either a participant or beneficiary may make, even though both claims may be based on identical facts. Interpreting the statute to provide remedies to qualified beneficiaries aligns with the statute's imposition of duties on employers to provide notice to those beneficiaries upon a qualifying event. The Court therefore finds that Addison and Lucas may maintain independent claims against Dignity.

Dignity, however, had no statutory obligation to provide notice to Adam. Under COBRA, only qualified beneficiaries must receive notice after a qualifying event. 29 U.S.C. § 1166(a)(4). The statue defines "qualified beneficiary" as any individual receiving benefits under the plan as of the day before the date of the qualifying event, and who is either a spouse or dependent child of the employee. 29 U.S.C. § 1167(3)(A).[3] Although Adam was a beneficiary under the plan before Regina's termination, he was not a spouse or dependent child. As such, Adam was not a qualified beneficiary entitled to receive notice under COBRA. See Rodriguez, 364 F. Supp. 2d at 45. Accordingly, Adam cannot maintain an independent claim for statutory penalties.

### c.   Penalty Assessment

Because the parties dispute the applicable dates for calculating delay, the Court will first determine the length of Dignity's delay. Although Plaintiffs argue that January 24, 2011, should be the applicable date for determining the end of the delay, the Court finds that the December 7, 2010, notice was a "good faith attempt to comply with a reasonable interpretation of the statute." See Smith v. Rogers Galvanizing, 128 F.3d at 1383. The December 7, 2010 notice provided Plaintiffs with the information they needed to make a determination about coverage, and although they were temporarily prevented from electing coverage, the deadline for extending coverage was extended to remedy

---

[3]Dignity additionally argues that it was not required to send notice to Lucas. However, the statute also defines a qualified beneficiary as "a child who is born to . . . the covered employee during the period of continuation coverage." 29 U.S.C. § 1167(3)(A). Lucas is therefore a qualified beneficiary entitled to notice.

the situation caused by Dignity's transition from Conexis to Payflex. The Court finds that the length of Dignity's delay was 168 days for Regina, Addison, and Lucas.[4]

The district court has discretion to impose a penalty and to set its amount, subject only to a $110 per day statutorily set maximum. 29 U.S.C. § 1132(c)(1)(A); 29 C.F.R. § 2575.502c-3. In deciding the penalty to assess, courts consider "bad faith or intentional misconduct on the part of the administrator, the number of requests for compliance made, and the existence of prejudice to the plan participant." *Lloynd v. Hanover Foods Corp.*, 72 F. Supp. 2d 469, 480 (D. Del. 1999). The absence or presence of one or even multiple factors is not dispositive. *See, e.g.,* Underwood v. Flour Daniel, Inc., 106 F.3d 394, *4 (4th Cir. 1997) (awarding the maximum penalty despite no evidence of prejudice). Moreover, although an "employer's good faith and the absence of harm are relevant in deciding whether to award a statutory penalty," the employer's good faith or absence of actual injury to a plaintiff does not foreclose the award of a statutory penalty. *Chesnut v. Montgomery,* 307 F.3d 698, 703-04 (8th Cir. 2002).

Dignity's continuous failure to provide the required notice, despite Regina's repeated requests, over the course of almost three (3) months, coupled with the circumstances relating to the termination of her health coverage, amounts to bad faith. *See Brown v. Aventis Pharm., Inc.*, 341 F3d 822, 825 (8th Cir. 2003) (finding that employer's failure to act for a period of several months, despite plaintiff's repeated phone calls, could amount to bad faith, and that the district court did not abuse its discretion in awarding maximum damages). There is no dispute that Regina made repeated inquiries about her right to receive a COBRA notice from the time she was informed of her retroactive employment termination on September 22, 2010, to the time COBRA notice

---

[4]Plaintiffs argue that because Lucas was not listed on either the December 7, 2010, notice or the January 24, 2011, notice, the penalty applicable to Lucas should extend until May 1, 2011, the day his benefits were reinstated. However, the Court finds that the December 7, 2010, notice was sufficient to constitute a good faith attempt to comply. Lucas was never listed as a beneficiary because his birth was after the termination of Regina's employment and benefits.

was given on December 7, 2010. There is also no dispute that Dignity was aware of Regina's pregnancy, its complications, and Regina's need for continuing health coverage. Although Plaintiffs' claim of bad faith is based on Dignity's treatment of Regina with respect to her employment and termination, Dignity made Regina's termination so intertwined with the COBRA notice that the two events cannot be completely separated. By making Regina's termination retroactive to June 22, 2010, and by making the termination of her COBRA benefits retroactive to June 30, 2010, Dignity could not have timely complied with COBRA's notice requirement. Dignity was already approximately two (2) months late when it informed Regina that it had terminated her coverage. In fact, Dignity's decision to terminate Regina's health benefits retroactively to more than forty-four (44) days before notification ensured that it would violate COBRA's notice provision and strip an employee of health coverage while she was undergoing a difficult pregnancy at Dignity's own St. Rose Hospital. If Dignity's conduct does not amount to bad faith, it is not clear to the Court when bad faith may be found. Moreover, Dignity cannot seek to separate the two events — termination of employment and termination of benefits — when Dignity also relies on the compensation it made to Regina in connection with her reinstatement to offset the harm it caused by violating COBRA.

Dignity argues that its failure to provide the requisite COBRA notice was due to an oversight resulting from Regina's two (2) terminations happening in such close succession and the transition between Conexis and Payflex. However, Dignity's argument ignores the three (3) months between Regina's termination and the December 7, 2010, notice, during which Regina repeatedly informed Dignity that she had not received a COBRA notice and requested that Dignity provide it. This argument also ignores Dignity's decision to delay COBRA notice by making the termination of benefits retroactive to months earlier. Moreover, rather than responding to Regina's requests for the information, Dignity repeatedly ignored her attempts to resolve the issue and, at one point, Dignity incorrectly informed Regina that the notice *had* been issued and that "there [was] really nothing else [it could] do." (Dkt. no. 88-8.) The net result of Dignity's actions

was to exacerbate the delay in providing Plaintiffs with the information they needed to make a determination about their coverage. Further, although the transition to Payflex may have legitimately caused further delay, any such transitional delay happened after the December 7, 2010, notice and the already accrued delay.

As to the prejudice factor, the sole evidence supporting Regina's claim of prejudice is her affidavit attached to the Opposition to Dignity's Motion for Summary Judgment. In her affidavit, Regina declares that (1) she suffered damage to her credit, financial hardship from increased medical bills, harm resulting from untreated sinus issues and a postponed mammogram, and general stress resulting from worrying about finances and her and her children's untreated medical conditions; (2) Addison suffered harm resulting from delayed treatment of infections; and (3) Lucas suffered harm resulting from delayed treatment of both a mass on his forehead and a severe diaper rash caused by undiagnosed food allergies.

Despite Dignity's attempts to diminish Regina's claim of financial hardship caused by the lack of health coverage during a critical time in her pregnancy and subsequent delivery, the undisputed evidence supports Regina's claim. Dignity's argument that it paid Regina's medical bills after her reinstatement ignores the financial hardship encountered before her reinstatement. Dignity's argument also ignores the time and effort that Regina spent to obtain the COBRA notice.

However, although foregoing medical treatment is an actionable prejudice, there must be evidence of some type of "physical impact." See In re Interstate Bakeries Corp., 704 F.3d 528, 536 (8th Cir. 2013). In other words, the delay in treatment must cause some type of physical harm, as opposed to simply postponing a recommended procedure. See Fadalla v. Life Automotive Prods., Inc., No. 2:06-cv-02679-BBD-tmp, 2009 WL 3295369 at *3 (W.D. Tenn. Oct. 13, 2009). Thus, Plaintiffs' assertions of harm resulting from Regina's missed mammogram, Lucas's forehead mass, and the stress and worry due to all delayed medical treatment are not actionable. Additionally, Dignity has provided evidence that both of Addison's infections took place after Plaintiffs had

received their COBRA notice. (Dkt. no. 95, Ex. B.) Thus, Addison's infections cannot constitute prejudice because Plaintiffs chose to forego this particular medical treatment while possessing the information necessary to make an informed decision about COBRA coverage. Finally, Plaintiffs' assertions of physical harm resulting from delayed treatment of Lucas's food allergies and diaper rash, and Regina's sinus problems, are based on diagnoses and subsequent exacerbated diagnoses told to the Plaintiffs by their doctors. These statements are hearsay, and without corroborating evidence from the medical providers, the Court cannot rely on them.[5]

Regina has offered sufficient support for her claim that she suffered financial hardship during the period when Plaintiffs did not have coverage, and the harm resulting from the time and inconvenience Regina was forced to endure to obtain the COBRA notice from Dignity. The Court finds that the maximum statutory penalty is appropriate given Dignity's bad faith conduct and the harm to Regina.

The penalty assessment for Dignity's COBRA violation with respect to Addison and Lucas is a closer call in light of the Court's finding that they suffered no actual injury or prejudice. The purpose of ERISA's statutory penalties is to induce compliance with the notice requirements and to punish non-compliance. See, e.g., DiSabatino v. DiSabatino Bros., Inc., 894 F. Supp. 810, 816 (D. Del. 1995). The Court has determined that Dignity acted in bad faith and should therefore be penalized even though Plaintiffs have failed to show actual injury to Addison and Lucas. Nonetheless, while the absence of actual injury does not foreclose an award of a penalty, see Chesnut, 307 F.3d at 703-04, the Court finds it would be inappropriate to assess anything more than a de minimis amount. The Court finds that $20 per day is appropriate for Addison and Lucas, respectively.

In sum, the Court finds that Regina Honey should be awarded statutory damage in the amount of $110 per day for Dignity's 168-day violation. The total amount is

---

[5] Federal Rule of Evidence 803(4)'s medical diagnosis exception to hearsay does not extend to statements made to patients by their doctors. *Bulthuis v. Rexall Corp.*, 789 F.2d 1315, 1316 (9th Cir. 1985) (per curiam).

$18,480.00. Dignity should be assessed a $20 penalty per day for Addison and Lucas, respectively. The amount of penalty awarded to Addison and Lucas is $3,360.00 each.

## V. CONCLUSION

It is therefore ordered that Plaintiffs' Motion for Leave to File Sur-Reply (dkt. no. 103) is granted.

It is further ordered that Defendant Dignity Health's Motion for Summary Judgment (dkt. no. 85) is denied as to Regina's, Addison's, and Lucas's claims, but granted as to Adam's claim.

It is further ordered that Plaintiffs' Motion for Summary Judgment (dkt. no. 88) is granted as to Regina's, Addison's, and Lucas's § 1132(c)(1)(A) claims and denied as to Adam's claim. The Clerk of the Court shall enter judgment in favor of (1) Regina Honey in the amount of $18,480.00; (2) Addison Honey in the amount of $3,360.00; and (3) Lucas Honey in the amount of $3,360.00.

The Clerk is instructed to close the case.

DATED THIS 16th day of June 2014.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE